DECISION AND JUDGMENT ENTRY
{¶ 1} This matter is before the court on appeal from a judgment issued by Perrysburg Municipal Court. The following facts are relevant to this appeal.
 {¶ 2} In September 2000, appellant, Selena Strickland, rented an apartment in Perry Lake Village Apartments ("Perry Lake") in Perrysburg, Ohio, which was owned by appellee, The Whitehurst Company. Appellant claims that when she turned on her heat for the winter, she discovered "an inordinate amount of soot and dirt" coming from her duct work, which irreparably damaged property in her apartment and presented a health risk. Appellant also claimed that she smelled a burning smell when the heater was running.
 {¶ 3} Appellant claimed that the sooty substance got on her furniture and carpet and into her cupboards, and that it coated windows; stained her plastic items, including Tupperware and compact disc cases; and caused her computer to stop working.
 {¶ 4} Appellant contacted Gloria Haywood, Perry Lake's site manager, who sent a maintenance man to appellant's apartment. The maintenance man changed the filter in appellant's furnace, which had been changed two weeks prior during regular maintenance, and installed a filter above a vent. However, appellant claimed there was no change in the problem, and that Gloria told her that cleaning the duct work, which appellant had requested, was the tenants' responsibility.
 {¶ 5} Appellant then contacted Channel 13 news. Reporter Jason Knowles came to appellant's apartment and brought a representative from Bluflame Service Company ("Bluflame"). Ted Hartwell, a sanitarian with the Wood County Department of Health ("Health Department") was also present. Appellant testified in her deposition that the Bluflame representative examined her furnace, and said that it was burning too hot and that there was not enough air coming from the duct work to circulate the air properly, "so what was coming in was basically sitting on the flames burning and shooting out into the room." Appellant testified that Hartwell agreed with Bluflame. Although no receipt or other paperwork from Bluflame appears in appellant's record, a complaint investigation report prepared by Hartwell does appear in the record. Hartwell's report notes Bluflame's analysis, but does not indicate his agreement or disagreement with the analysis.
 {¶ 6} Appellant next contacted Glass City Heating and Air Conditioning ("Glass City"). According to appellant's deposition, a representative from Glass City removed insulation from the duct work in appellant's apartment, and said that the duct work was full of "dust and the stuff from the furnace." A receipt from Glass City documenting the visit appears in appellant's record. The receipt indicates that there was dust in appellant's duct work, not soot.
 {¶ 7} On February 3, 2001, appellant sent a letter to the management of her apartment complex, documenting her concerns and announcing that she would escrow her rent with Perrysburg Municipal Court if her ducts and vents were not cleaned by March 1, 2001. Appellant submitted an application to deposit rent to the trial court, and began placing her rent in escrow on March 1, 2001. Appellee filed an application for full release of rent and request for pretrial conference on March 22, 2001.
 {¶ 8} Appellant's trial commenced on August 23, 2001. Haywood, the apartment manager, testified that after a Perry Lake maintenance man had promptly responded to several complaints from appellant regarding the furnace, Haywood contacted M M Heating and Cooling ("M M"). Anthony Ross, a technician from M M, testified that appellant's furnace was "clear and clean" and that he observed no soot. Ross stated that he did not examine the duct work. Haywood stated that she had accompanied service technicians to appellant's apartment on two occasions, and that she had seen no evidence that the furnace was causing any soot problem.
 {¶ 9} Haywood and Ross testified that they observed that appellant had candles in her apartment. Appellant's friends, Patrick Westrick and Rebecca Crye, testified that they had seen appellant burn candles in her apartment. Appellant testified at her deposition that she primarily burned Yankee scented candles, which she believed were a higher-quality brand. Appellant testified at trial that she had stopped burning candles, or perhaps only burned one or two, after January 1, 2001, to see if that would make a difference in the soot, and it had not.
 {¶ 10} Hartwell from the Health Department testified that although he did not inspect the furnace himself, he believed appellant's problem was the result of burning candles. Both Hartwell and Ross were questioned on the stand about "ghosting." Ross described the term in this way:
 {¶ 11} "Ghosting is a term that they use * * * particularly * * * in new houses * * * because they're more air tight, but you'll have a streak, a black streak or something running up a wall that will actually form * * * you could actually see each joist space going up a wall * * *. [T]he particulates or these airborne particles will go to the wall, or in the crack between the carpet and the wall."
 {¶ 12} When asked what causes ghosting, Ross replied, "[I]t could be caused by a number of things, but the biggest thing and the most common thing is ghosting from candles, just by the different candles, the perfumes they put in the candle. Some candles have lead wicks which can produce these particulates."
 {¶ 13} Ross testified that he had learned about ghosting from industry classes he had taken and from information on the internet.
 {¶ 14} Hartwell testified that he had learned about ghosting from environmental magazines and the internet. When asked how many candles it takes to create ghosting, Hartwell replied:
 {¶ 15} "I think it varies. One of the things that will have an effect is the type of candle it is, what the wax is, maybe what the wick is. One of the articles mentioned that some of the scents and things they are putting in some candles now are causing [sic] more than others."
 {¶ 16} Hartwell testified that it was his opinion that the soot in appellant's apartment was caused by candle burning, so he did not issue a violation notice to Perry Lake.
 {¶ 17} Westrick, appellant's friend, testified that he is a maintenance man for a different apartment complex, and appellant asked him to examine her furnace. Westrick said he believed appellant had a big soot problem, possibly caused by a blocked flue.
 {¶ 18} Crye, another one of appellant's friends, testified that she cleaned the carpets in appellant's apartment three times during the year appellant occupied the unit. Crye said that she had observed soot or dirt along the baseboards of appellant's apartment, but that she could not say what had caused it.
 {¶ 19} Nicholas Hilt, an employee at Stone Computer, testified that he repaired the power supply for appellant's computer, which had been clogged with a "brown, green, and fibrous" substance. As to the cause of the substance, Hilt stated, "[H]onestly I could not say what that really is from."
 {¶ 20} Orlean Strickland, appellant's mother, testified that "[i]t smelled like something burning" for the first few minutes when the heating unit in appellant's apartment would come on, and that appellant would keep her heat low to avoid activating the blower.
 {¶ 21} In its decision and judgment entry dated September 18, 2001, the trial court stated:
 {¶ 22} "In determining whether to release rent monies from escrow, the court must determine if the Landlord has taken all reasonable measures to correct any health and safety issues which a tenant properly complains about. In this case, the court was not presented with any credible evidence that the soot found in respondent's apartment was caused by the acts or omissions of the petitioner. The evidence does show, however, that there is a strong likelihood that any soot in the apartment emanated from the candles and not the furnace. Therefore, petitioner's request to release money held in escrow is granted."
 {¶ 23} Appellant filed her notice of appeal on October 16, 2001, and asks this court to consider the following assignment of error:
 {¶ 24} "The decision by the lower court against Appellant was against the manifest weight of the evidence presented at trial and hearing pursuant to Ohio law and the U.S. Constitution."
 {¶ 25} Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." Black's Law Dictionary (6 Ed. 1990) 1594.
 {¶ 26} The Ohio Supreme Court has said that "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `"thirteenth juror"' and disagrees with the factfinder's resolution of the conflicting testimony." State v. Thompkins (1997), 78 Ohio St.3d 380,387, citing Tibbs v. Florida (1982), 457 U.S. 31, 42. "(`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.')." Thompkins, supra, citing State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 27} In this case, we agree with the trial court that appellant did not produce credible evidence that any soot in her apartment was caused by appellee's acts or omissions. Although appellant claims that the Bluflame representative attributed the soot to problems with the furnace, appellant has presented us with no documentation from Bluflame.
 {¶ 28} We additionally note that appellant alleges that she suffered exacerbated allergies and asthma conditions, and that she contracted bronchitis as a result of the soot and dust in her apartment. However, the only medical documentation appellant presented was a letter from her doctor asking appellee to assist appellant in correcting any furnace problems. The letter does not contain a medical opinion or diagnosis that appellant became sick as a result of soot or dust in her home.
 {¶ 29} The evidence that was presented in appellant's case included seven pages of information from the internet, which were attached to Hartwell's Health Department report. The information is derived from two sources, the Iowa State University Agricultural and Biosystems Engineering Department ("ISU"), and Home Energy magazine ("Home Energy"). Although not conclusive, the information does shed some light on ghosting.
 {¶ 30} ISU claims that "[b]lack streaks on walls and ceilings are a perplexing and difficult problem to diagnose and solve. Only limited research studies are available. * * * Soot comes from incomplete combustion of a carbon-based material. Any material that can burn can produce soot, including natural gas, LP, wood, oil, candle wax, gasoline, diesel fuel, tobacco smoke, dust, dirt, cooking oils, and carpet fibers. * * * Uncontrolled combustion, such as wood burning in an open fireplace, candles, and cigarettes, produce higher amounts of soot."
 {¶ 31} Home Energy adds that "there are always two culprits at fault. Any time deposition of soot, dust, or carbon appears * * * [t]here must be a source of particulate matter, like the carbon soot from candles or gas log fireplaces and there must be a driving force, like gravity, electrostatic attraction, or a forced-air unit to push the particulate against a surface."
 {¶ 32} Based on this information, it appears as though appellant's furnace may have acted as a vehicle for transporting carbon particulate matter derived from burning candles. However, based on all of the evidence presented in this case, we cannot say that the trial court lost its way in finding that appellee took all reasonable measures to correct any health and safety issues regarding appellant's furnace. Appellee conducted several service calls during which it checked appellant's furnace and replaced and installed various filters. When appellant continued to complain, appellee contacted a heating and cooling company to check the furnace, and they reported that the furnace was not producing soot. We also cannot say that the trial court lost its way in finding that candles were the likely source of any soot in appellant's apartment.
 {¶ 33} Consequently, appellant's sole assignment of error is found not well-taken, and the judgment of the Perrysburg Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal.
JUDGMENT AFFIRMED.
Peter M. Handwork, J., James R. Sherck, J., and Mark L. Pietrykowski,P.J., CONCUR.